IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


JOHN HENRY CAMPBELL and )
DONNA SUZETTE CAMPBELL, )
)
            Plaintiffs, )
)
    v. )                          1:11CV1017
)
CITIMORTGAGE, INC., )
)
            Defendant. )


**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on: (1) Plaintiffs' Motion
to Remand to State Court (Docket Entry 7); (2) Defendant's Motion
to Dismiss Plaintiffs' Complaint (Docket Entry 9); and (3)
Plaintiffs' Motion for Leave to Amend Complaint (Docket Entry 19).
(See Docket Entries dated Feb. 7, 2012, and June 14, 2012.) For
the reasons that follow, Plaintiffs' Motion to Remand (Docket Entry
7) is denied, Plaintiffs' Motion for Leave to Amend Complaint
(Docket Entry 19) is granted, and Defendant's Motion to Dismiss
(Docket Entry 9) should be granted except as to Plaintiffs' "Unfair
Trade Practices" claim.[1]

---

[1] For reasons stated in William E. Smith Trucking, Inc. v.
Rush Trucking Ctrs. of N.C., Inc., No. 1:11CV887, 2012 WL 214155,
at *2-6 (M.D.N.C. Jan. 24, 2012) (unpublished), and Deberry v.
Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19,
2010) (unpublished), the undersigned United States Magistrate Judge
opts to enter an order rather than a recommendation regarding
remand and amendment; however, only a recommendation may issue as
to the motion seeking dismissal, see 28 U.S.C. § 636(b)(1).

Per Plaintiffs' Complaint, on March 23, 2011 - almost a month after Defendant commenced a foreclosure proceeding on Plaintiffs' home - Defendant offered Plaintiffs the chance to apply for a loan modification via the "Citi Modification Program" (Docket Entry 4, ¶¶ 30-32), a program apparently adopted by Defendant to comply with the congressionally-created Home Affordable Mortgage Program ("HAMP").[2] In that offer, Defendant allegedly stated that it would consider Plaintiffs for a modification of their mortgage if they submitted certain financial information by April 6, 2011. (Id. ¶ 34.) Plaintiffs assert that they timely submitted the requested documents. (Id. ¶¶ 32-33.) Thereafter, on April 12, 2011, and May 16, 2011, Plaintiffs allegedly received additional notices asking for more financial documentation (id. ¶¶ 36-37), which they allegedly submitted per the directions enclosed (id. ¶¶ 38-39). According to Plaintiffs, "a few days prior to June 22, 2011" (id. ¶ 40), they received a request for social security information that Defendant described as the final piece of information needed to

---

[2] "HAMP was created by Congress under the Emergency Economic Stabilization Act of 2008," Watkins v. Flagstar Bank, FSB, No. C/A No. 3:11-3298-CMC-PJG, 2012 WL 1431380, at *1 n.2 (D.S.C. Apr. 2, 2012) (unpublished), in order to "'stabilize the housing market and help struggling homeowners get relief and avoid foreclosure,'" In re Hinson, Bankr. No. 10-07415-8-JRL, 2012 WL 1354807, at *10 (Bankr. E.D.N.C. Apr. 17, 2012) (unpublished) (quoting Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages, Version 1.0, Forward, at 6 (Aug. 19, 2010)).

complete the modification review (id.), and Plaintiffs submitted this information "several days before" June 22, 2011 (id. ¶ 41).

On June 22, 2011, Plaintiffs allegedly called Defendant to confirm receipt of the requested social security information and learned that Defendant had decided to proceed with the foreclosure. (Id. ¶¶ 42-43.)   Plaintiffs further allege that, upon making inquiry of the law firm handling the foreclosure, they learned that the Cabarrus County Clerk of Court entered the order permitting the foreclosure on May 2, 2011, and a third-party bidder purchased their home on June 22, 2011.   (Id. ¶¶ 45-48.)[3]   Plaintiffs have attached documents to their Complaint reflecting an original foreclosure sale date of May 23, 2011 (see Docket Entry 4-2 at 1; Docket Entry 4-6 at 1), rescheduled to June 22, 2011, the date on which Plaintiffs' home sold (see Docket Entry 4-6 at 1).

As a result of the foregoing events, Plaintiffs filed a Complaint in the General Court of Justice, Superior Court Division, Cabarrus County, North Carolina, asserting claims for:   (1) "Negligence and Negligent Misrepresentation" (Docket Entry 4, ¶¶ 51-56); (2) "Conversion" (id. ¶¶ 57-60); (3) "Violation of Treasury Directive 10-02 and HAMP Servicer Requirements" (id.

---

[3] Plaintiffs also allege that, since the sale on June 22, 2011, Defendant has continued to send them correspondence related to the foreclosed mortgage loan, including correspondence dated July 21, 2011, and October 7, 2011, addressing "delinquency expenses," as well as a solicitation dated August 11, 2011, offering help with a pre-foreclosure sale in order to avoid foreclosure.   (Docket Entry 4, ¶ 52.)

¶¶ 61-72); (4) "Breach of Contract and Intended Third Party Beneficiary Doctrine" (id. ¶¶ 73-79); (5) "Breach of Implied Covenant of Good Faith and Fair Dealing" (id. ¶¶ 80-83); (6) "Violations of the North Carolina Secure and Fair Enforcement of Mortgage Licensing Act" (id. ¶¶ 84-86); (7) "Unjust Enrichment" (id. ¶¶ 87-90); (8) "Unfair Trade Practices" (id. ¶¶ 91-95); (9) "Intentional Infliction of Emotional Distress" (id. ¶¶ 96-100); and (10) "Exploitation of Elder Adults" (id. ¶¶ 101-04). Defendant timely filed a Petition of Removal with this Court that alleged the existence of both diversity of citizenship and federal question jurisdiction. (Docket Entry 1.) Plaintiffs then moved for remand based on lack of subject matter jurisdiction and/or abstention principles. (Docket Entry 7.) Defendant responded (Docket Entry 12) and moved for dismissal of all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) (Docket Entry 9). Plaintiffs opposed dismissal (Docket Entry 14) and Defendant replied (Docket Entry 15). Plaintiffs also filed the instant Motion for Leave to Amend Complaint (Docket Entry 19), to which Defendants responded in opposition (Docket Entry 20).

Because subject matter jurisdiction constitutes a threshold question, see Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998), this Memorandum Opinion addresses Plaintiffs' Motion to Remand first, before turning to their Motion for Leave to Amend Complaint and Defendant's Motion to Dismiss Plaintiff's Complaint.

-4-

## II. Plaintiffs' Motion to Remand to State Court

In support of their instant Motion, Plaintiffs contend: (1) "[t]he mere presence of a federal issue or regulation in an action grounded in state law does not justify federal question jurisdiction" (Docket Entry 8 at 3); (2) "[D]efendant has not proved by evidence the amount in controversy" (id. at 5); and (3) the Court should abstain from exercising jurisdiction over this matter under the Burford Doctrine (id.). Defendant has responded that: (1) the instant action raises a substantial federal question via its causes of action for violations of HAMP and its related Servicer Participation Agreement (Docket Entry 12 at 4); (2) "Plaintiffs' Complaint on its face alleges an amount in controversy in excess of $75,000.00 and all available evidence demonstrates that Plaintiffs' potential recovery far exceeds this jurisdictional threshold" (id. at 7); and (3) "[a]bstention in this matter would be inappropriate" (id. at 12).

### A. Diversity Jurisdiction

Federal courts possess subject matter jurisdiction over civil actions involving diverse parties "where the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. § 1332. The only dispute between the Parties regarding the existence of diversity jurisdiction concerns whether "the matter in controversy exceeds the sum or value of $75,000," 28 U.S.C. § 1332. (See Docket Entry 7, ¶ 3; Docket Entry 12 at 7-11.) The removing party carries the

burden of establishing that the amount in controversy meets that standard. See Hardig v. Certainteed Corp, No. 3:11CV535, 2012 WL 423512, at *1 (W.D.N.C. Feb. 9, 2012) (unpublished); see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) ("The burden of demonstrating jurisdiction resides with the party seeking removal." (internal quotation marks omitted)).

"In most cases, the 'sum claimed by the plaintiff controls' the amount in controversy determination." JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)). When computing the amount in controversy, "[i]n addition to compensatory and statutory damages, punitive damages may be included." McGraw v. Discovery Fin. Servs., Inc., No. Civ.A.2:05 0215, 2005 WL 1785259, at *5 (S.D.W. Va. July 26, 2005) (unpublished) (citing 14B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3702 (3d ed. 1998)); see also Perez v. Choice Endeavors, Inc., No. 1:05CV526, 2006 WL 995128, at *2 (M.D.N.C. Apr. 12, 2006) (Tilley, C.J.) (unpublished) ("[P]unitive damages, if permitted under the controlling law, should be included in determining whether the jurisdictional amount is satisfied." (citing A.F.A. Tours, Inc. v. Whitchurch, 937 F.2d 82, 87 (2d Cir. 1991))). Courts also consider any good-faith request for trebled damages. See Fox v. Aflac Inc., No. 1:11cv177, 2011 WL 3897796, at *2 (W.D.N.C. Sept. 6, 2011) (unpublished) (citing cases).

In this case, contrary to Plaintiffs' contention that "[t]here is no amount for damages alleged in [their] [C]omplaint" (Docket Entry 7 at 2), their allegations establish that the amount in controversy exceeds $75,000. First, in their Prayer for Relief, Plaintiffs explicitly request: (1) "damages for breach of contract and breach of implied covenant of good faith and fair dealing in an amount in excess of $10,000.00" (Docket Entry 4 at 16); (2) "damages for negligence in excess of $10,000.00" (id.); (3) "damages in excess of $10,000.00 for unjust enrichment" (id.); (4) "damages in excess of $10,000.00 for intentional infliction of emotional distress" (id. at 17); and (5) "damages in excess of $10,000.00 for exploitation of elder adults" (id.). The total amount of those requests alone thus exceeds $50,000. In addition, Plaintiffs have demanded "[t]hat punitive damages be awarded for Defendant's outrageous conduct[.]" (Id.) As Defendant has observed, North Carolina law permits an award of punitive damages in conjunction with intentional infliction of emotional distress claims and this Court (per then-Chief Judge Tilley) has recognized that punitive damages may represent a multiple of four as to the related compensatory sum, such that Plaintiffs effectively seek an additional $40,000 in punitive damages (i.e., $10,000 x 4) on top of the above-referenced $50,000-plus in aggregate, requested compensatory damages. (See Docket Entry 12 at 9 (citing Holloway

v. Wachovia Bank & Trust Co., N.A., 339 N.C. 338, 348, 452 S.E.2d 233, 239 (1994), and Perez, 2006 WL 995128, at *3).)[4]

Alternatively, Plaintiffs also have asked for "damages to be determined at trial for conversion" (Docket Entry 4 at 16) and have identified the property converted as "Plaintiffs' home and the proceeds from the sale of Plaintiffs' home" (id., ¶ 58). Defendant, in turn, has provided a copy of the Trustee's Deed showing that Defendant received $41,600 in proceeds from the foreclosure sale. (See Docket Entry 12-1 at 1.)[5] The addition of that sum to the above-described more than $50,000 in compensatory damages requested by Plaintiffs in connection with their breach of contract, negligence, unjust enrichment, intentional infliction of emotional distress, and exploitation of elder adults claims again exceeds the diversity jurisdiction requirement of $75,000.

Finally, as to their "Unfair Trade Practices" claim, Plaintiffs have requested "treble damages pursuant to N.C.G.S. § 75-16, and reasonable attorneys' fees pursuant to N.C.G.S. § 75-

---

[4] Other courts have reached similar conclusions in this context. See, e.g., Blaylock v. Mutual of N.Y. Life Ins. Co., 228 F. Supp. 2d 778, 786 n.5 (S.D. Miss. 2002) ("[T]he Fifth Circuit recently described as 'very conservative' a district court's application of a 6:1 ratio of punitive damages to compensatory damages in calculating an amount in controversy . . . .").

[5] Plaintiffs did not file a reply contesting the authenticity of that copy of the Trustee's Deed. (See Docket Entries dated Jan. 12, 2012, to present.) "[T]he Court may determine the amount in controversy by considering all evidence bearing on the issue . . . ." Daqiel v. Kemper Corp., No. 1:11CV262, 2012 WL 1596978, at *2 (W.D.N.C. May 7, 2012) (unpublished).

16.1, or in the alternative . . . punitive damages against Defendant in an amount to be determined by a jury at trial[.]" (Docket Entry 4 at 16.) Plaintiffs have identified the damages suffered from the alleged unfair trade practices as the loss of their home and the proceeds of the foreclosure sale (i.e., $41,600). (See id., ¶ 92 (citing "injury to Plaintiffs as set forth above"); see also id., ¶ 58 (describing injury as loss of "Plaintiffs' home and the proceeds from the sale of Plaintiffs' home").) As Defendant notes, a trebling of compensatory damages in the foreclosure proceeds alone would well exceed the $75,000 jurisdictional threshold. (See Docket Entry 12 at 10.)

Given all of these considerations, Defendant has met its burden of showing that the amount in controversy exceeds $75,000.

## B. Burford Abstention

As an alternative ground for remand, Plaintiffs contend that, even if diversity jurisdiction exists, the Court should abstain under the doctrine set out in Burford v. Sun Oil Co., 319 U.S. 315 (1943), because: "1) timely and adequate state-court review is available, 2) there exists difficult questions of state law, and 3) should the Court hear this case, there is a risk of disrupting state efforts to establish a coherent policy." (Docket Entry 8 at 6 (internal quotation marks omitted).) Defendant has responded that, "[a]s Plaintiffs have not met any prerequisite for abstention, this Court should not abstain from deciding this case

on the merits and deny Plaintiffs' [instant] Motion." (Docket Entry 12 at 14.) The Burford Doctrine states:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River Water Conservation Dist. v. United States, 424 U.S. [800, 814 (1976)].

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989).

The Court should decline to abstain under Burford for several reasons. First, in this case, the Court is not simply "sitting in equity," id.; rather, as shown in Subsection II.A., Plaintiffs have requested damages. "[A] district court may abstain from exercising its jurisdiction and dismiss a case under *Burford* 'only where the relief being sought is equitable or otherwise discretionary.'" Gross v. Weingarten, 217 F.3d 208, 223 (4th Cir. 2000) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996)). Second, this case does not involve "the proceedings or orders of state administrative agencies," New Orleans Pub. Serv., 491 U.S. at 361. Plaintiffs acknowledge as much in their Brief supporting the instant Motion (see Docket Entry 8 at 6 ("While the case at bar does not involve an administrative proceeding, it does involve a

foreclosure, which is governed by North Carolina law.")) and they offer no justification for the Court to extend the Burford Doctrine to the foreclosure context (see id.). Moreover, federal courts regularly exercise jurisdiction over matters involving state foreclosures. See, e.g., Wolf v. Federal Nat'l Mortg. Ass'n, No. 11-2419, 2013 WL 749652 (4th Cir. Feb. 28, 2013) (unpublished); Bowers v. Bank of Am., N.A., 905 F. Supp. 2d 697, 700-01 (D. Md. 2012); Audley v. PNC Mortg., No. 11CV347, 2012 WL 1660808, at *3 (M.D.N.C. May, 11, 2012) (Peake, M.J.) (unpublished), recommendation adopted, slip op. (M.D.N.C. June 27, 2012) (Schroeder, J.). Finally, Plaintiffs fail to articulate how this Court's handling of this case would undermine North Carolina's ability to establish a coherent policy. (See Docket Entry 8 at 6.)

In sum, Plaintiffs' arguments that this Court should abstain under the Burford Doctrine lack merit. See Audley, 2012 WL 1660808 at *3 (rejecting contention that the Court should abstain from foreclosure-related case under Burford because the plaintiff "failed to show that an administrative process is at issue" and because "there is no basis to conclude that federal review will disrupt any state effort to develop a coherent policy").[6]

---

[6] Because diversity jurisdiction exists and the Burford Doctrine does not apply, Plaintiffs' request for remand falls short, without consideration of federal question jurisdiction.

### III.  Plaintiffs' Motion for Leave to Amend Complaint

Plaintiffs seek to abandon their claim for "Violation of Treasury Directive 10-02 and HAMP Servicer Requirements" and to move the paragraphs supporting that claim into the body of their pleading.  (Docket Entry 19.)  Given the procedural posture of this case and Defendants opposition to amendment (noted in Section I), Plaintiffs may "amend [their] pleading only with . . . the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2).  "The [C]ourt should freely give leave when justice so requires."  Id.  Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962).  Reasons to deny leave to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . ."  Id.; see also Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010) ("A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.").

In opposing Plaintiffs' proposed amendment, Defendant focuses only on the alleged futility of the remaining claims, as discussed

in Defendant's Motion to Dismiss.  (<u>See</u> Docket Entry 20.)  Under these circumstances, the undersigned Magistrate Judge will allow the amendment and will analyze the sufficiency of Plaintiffs' remaining claims in connection with Defendant's Motion to Dismiss.

## IV.  Defendant's Motion to Dismiss

A complaint fails to state a claim if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Id.</u>  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u>[7]

In the instant action, Plaintiffs' Amended Complaint asserts the following nine claims against Defendant:  (1) "Negligence and

_____

[7] "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense."  <u>Francis v. Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009).

Negligent Misrepresentation" (Docket Entry 19-1, ¶¶ 63-68); (2) "Conversion" (id. ¶¶ 69-72); (3) "Breach of Contract and Intended Third Party Beneficiary Doctrine" (id. ¶¶ 73-79); (4) "Breach of Implied Covenant of Good Faith and Fair Dealing" (id. ¶¶ 80-83); (5) "Violations of the North Carolina Secure and Fair Enforcement of Mortgage Licensing Act" (id. ¶¶ 84-86); (6) "Unjust Enrichment" (id. ¶¶ 87-90); (7) "Unfair Trade Practices" (id. ¶¶ 91-95); (8) "Intentional Infliction of Emotional Distress" (id. ¶¶ 96-100); and (9) "Exploitation of Elder Adults" (id. ¶¶ 101-04). Defendant essentially contends that, although couched in terms of state law, all of Plaintiffs' claims rest on obligations imposed on Defendant by HAMP and the related Servicer Participation Agreement ("SPA"), matters as to which Congress did not create a private right of action, and thus that Plaintiffs' claims all fail as a matter of law. (Docket Entry 10.)

Analysis of this argument must begin with a brief discussion of certain aspects of HAMP. "HAMP . . . is governed by guidelines set forth by Fannie Mae and the United States Department of the Treasury. The [SPAs] between mortgage loan servicers and Fannie Mae require the servicers to perform loan modification and foreclosure prevention services specified in the HAMP Guidelines." Watkins v. Flagstar Bank, FSB, C/A No. 3:11-3298-CMC-PJG, 2012 WL 1431380, at *1 n.2 (D.S.C. Apr. 2, 2012) (unpublished). When considering a HAMP modification, a servicer first must determine

whether a homeowner meets the applicable eligibility requirements. See Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556-57 (7th Cir. 2012). If eligible, the servicer implements a Trial Period Plan ("TPP") under new repayment terms. Id. at 557. "After the trial period, if the borrower complied with all terms of the TPP Agreement - including making all required payments and providing all required documentation - and if the borrower's representations remained true and correct, the servicer had to offer a permanent modification." Id. Finally, during the modification review period, the servicer must refrain from foreclosing. (See Docket Entry 4-10 at 1 ("The significant changes described in this Supplemental Directive include . . . [p]rohibition against referral to foreclosure until . . . a borrower has been evaluated and determined to be ineligible for HAMP.").)

Many litigants have pursued claims related to HAMP, as the United States Court of Appeals for the Seventh Circuit recently explained:

> We have identified more than 80 other federal cases in which mortgagors brought HAMP-related claims. The legal theories relied on by these plaintiffs fit into three groups. First, some homeowners tried to assert rights arising under HAMP itself. Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers. See, *e.g.*, *Simon v. Bank of Am., N.A.*, No. 10-cv-00300-GMN-LRL, 2010 WL 2609436, at *10 (D. Nev. June 23, 2010) (dismissing claim because HAMP "does not provide borrowers with a private cause of action against lenders for failing to consider their application for loan modification, or even to modify an eligible loan").

In the second group, plaintiffs claim to be third-party beneficiaries of their loan servicers' SPAs with the United States. Most but not all courts dismissed these challenges as well, holding that borrowers were not intended third-party beneficiaries of the SPAs. Compare *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG), 2010 WL 935680, at *2-3 (S.D. Cal. Mar. 15, 2010) (granting motion to dismiss claims of plaintiff pursuing third-party beneficiary theory), and *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM (BLM), 2009 WL 4981618, at *2-3 (S.D. Cal. Dec. 15, 2009) (same), with *Sampson v. Wells Fargo Home Mortg., Inc.*, No. CV 10-08836 DDP (SSx), 2010 WL 5397236, at *3) (C.D. Cal. Nov. 19, 2010) ("Here, the court is persuaded that Plaintiff - an individual facing foreclosure of her home - has made a substantial showing that she is an intended beneficiary of the HAMP, a federal agreement entered into by Defendants."). The courts denying motions to dismiss may have been led astray by *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009), which was reversed by the Supreme Court. See *Astra USA, Inc. v. Santa Clara County*, 131 S. Ct. 1342 (2011). In *Astra*, the Supreme Court held that health care facilities covered by § 340B of the Public Health Services Act could not sue as third-party beneficiaries of drug price-ceiling contracts between pharmaceutical manufacturers and the government because Congress did not create a private right of action under the Act. *Id.* at 1345. Here, too, Congress did not create a private right of action to enforce the HAMP guidelines, and since *Astra*, district courts have correctly applied the Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs. *See, e.g., Boyd v. U.S. Bank, N.A. ex rel. Sasco Aames Mortg. Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 757 (N.D. Ill. 2011).

. . . [T]he third group, bas[es] claims directly on the [Trial Period Plan] Agreements themselves. These plaintiffs avoid *Astra* because they claim rights not as third-party beneficiaries but as parties in direct privity with their lenders or loan servicers. In these third-generation cases, district courts have split. Including first- and second-generation cases, about 50 of the courts granted motions to dismiss in full. See, *e.g., Nadan v. Homesales, Inc.*, No. CV F 11-1181 LJO SKO, 2011 WL 3584213 (E.D. Cal. Aug. 12, 2011); *Vida v. OneWest Bank, F.S.B.*, No. 10-987-AC, 2010 WL 5148473 (D.

Or. Dec. 13, 2010).  In 30 or so cases, courts denied the
motions in full or in part, allowing claims based on
contract, tort, and/or state consumer fraud statutes to
go forward.  See, *e.g.*, *Allen v. CitiMortgage, Inc.*, No.
CCB-10-2740, 2011 WL 3425665 (D. Md. Aug. 4, 2011);
*Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342 (D.
Mass. 2011).

Wigod, 673 F.3d at 559 n.4.

Plaintiffs assert that they do not allege direct violations of
HAMP or the SPA, but instead challenge "the *way* in which
[D]efendant handled the process."  (Docket Entry 14 at 10 (italics
in original).)  This distinction is largely illusory; i.e., despite
Plaintiffs' (re-)framing of their Complaint, their claims generally
turn on the allegation that Defendant sold their home in
foreclosure while supposedly conducting a loan modification review,
in violation of HAMP and the SPA.  However, "the mere fact that
HAMP does not provide a private right of action does not mean that
all state law claims affiliated with or related to an unsuccessful
HAMP application are necessarily preempted."  Spaulding v. Wells
Fargo Bank, N.A., 714 F.3d 769, 776 n.4 (4th Cir. 2013) (citing
with approval Wigod, 673 F.3d at 581, for its statement that "[t]he
absence of a private right of action from a federal statute
provides no reason to dismiss a claim under state law just because
it refers to or incorporates some element of the federal law").  In
other words, although Plaintiffs cannot overcome HAMP's lack of a
private right of action by simply referencing state law, neither
can Defendant shield itself from liability for all state causes of

-17-

action simply because its conduct also implicated HAMP. Accordingly, an appropriate determination of the viability of Plaintiffs' claims requires an individualized assessment of each asserted cause of action to ascertain if Plaintiffs have alleged facts sufficient to state a claim under North Carolina law.[8]

## A. Negligence and Negligent Misrepresentation

Plaintiffs' claims for negligence and negligent misrepresentation rely on assertions that:

1) "Defendant supplied Plaintiffs with false information in the form of representations that Defendant would review Plaintiffs' application for a HAMP loan modification while, at the same time, Defendant went forward with foreclosure and wrongfully sold Plaintiffs' home at a foreclosure sale" (Docket Entry 19-1, ¶ 65);

2) "Defendant failed to exercise reasonable care or competence in its dealings with Plaintiffs and failed to comply with its duties under the SPA" (id. ¶ 66);

3) "Plaintiffs were justified in their reliance on Defendant's representations" (id. ¶ 67); and

_____

[8] The Parties apparently agree that North Carolina law governs any state law claims. (See Docket Entry 10 at 11-17; Docket Entry 12-17.) No reason appears to question that view. To the extent the Court must draw conclusions about matters of North Carolina law, "the highest court of the state is the final arbiter of what is state law . . . [and,] [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." West v. American Tel. & Tel. Co., 311 U .S. 223, 236-37 (1940).

4) Plaintiffs suffered damages in that they "forewent other remedies that might have been pursued to save their home from a foreclosure sale; [they] lost any equity they had in their home; and [their] credit rating has been damaged" (id. ¶ 68).

In North Carolina, the torts of negligence and negligent misrepresentation require a showing that the defendant owed the plaintiff a duty. See Cucina v. City of Jacksonville, 138 N.C. App. 99, 102, 530 S.E.2d 353, 355 (2000). Plaintiffs have failed to allege facts establishing the existence of any such duty held by Defendant regarding the loan modification process. In this regard, North Carolina courts have recognized "that a lender has a duty to perform those responsibilities specified in a loan agreement, but ha[ve] declined to impose any duty beyond those expressly provided for in the agreement." Wagner v. Branch Banking & Trust Co., No. COA05-1334, 179 N.C. App. 436 (table), 634 S.E.2d 273 (table), 2006 WL 2528495, at *2 (Sept. 5, 2006) (unpublished); see also Spaulding, 714 F.3d at 778 ("Banks typically do not have a fiduciary duty to their customers.").

Plaintiffs contend that, "[w]hen [D]efendant solicited [P]laintiffs for participation in HAMP, and began accepting financial documentation from [P]laintiffs, all the while representing to [P]laintiffs that they were being reviewed for a loan modification in order to avoid foreclosure, [D]efendant placed itself in a position where it was necessary to use ordinary care to

prevent injury to the property of [P]laintiffs." (Docket Entry 14 at 12.)   To support this position, Plaintiffs note that North Carolina law recognizes that "'[t]he duty of ordinary care arises whenever one person is by circumstances placed in such a position towards another that anyone of ordinary sense recognizes the need to use ordinary care to prevent injury to the person or property of the other.'" (Id. (quoting Lambeth v. Media Gen., Inc., 167 N.C. App. 350, 352, 605 S.E.2d 165, 167-68 (2004)) (additional internal quotation marks and citation omitted).)   Further, Plaintiffs have cited two cases from the United States District Court for the Northern District of California - Ansanelli v. JPMorgan Chase Bank, N.A., No. C 10-03892 WHA, 2011 WL 1134451, at *7 (N.D. Cal. Mar. 28, 2011) (unpublished), and Garcia v. Ocwen Loan Servicing, LLC, No. C 10-0290 PVT, 2010 WL 1881098, at *3-4 (N.D. Cal. May 10, 2010) (unpublished) - holding that a servicer's acts in offering a loan modification moved it beyond its role as a mere lender and established a duty of care. (See Docket Entry 14 at 12.)

On the instant facts,[9] however, those cases rejecting recognition of any such a relationship between lender and borrower in this context provide the better guidance. See, e.g., Ahmad v. Wells Fargo Bank, NA, Case No. 11-15204, 2012 WL 917769, at *7-9

_____

[9] Notably, Plaintiffs do not allege that Defendant offered a TPP Agreement, promised a loan modification, or otherwise took substantial steps to remove itself from its role as a mere lender. (See Docket Entry 19-1.)

(E.D. Mich. Mar. 19, 2012) (unpublished) (finding no duty and thus no negligence claim where plaintiffs argued that "[d]efendants had a duty to refrain from foreclosing on [p]laintiffs' property while [p]laintiffs were under consideration for a HAMP modification" and citing decisions rejecting similar claims).  As a result, Plaintiffs' negligence-based claims fail as a matter of law.

### B.  Conversion

Plaintiffs next allege that, "[b]y causing the wrongful foreclosure, Defendant made an unauthorized assumption and exercise of ownership over property rightfully belonging to Plaintiffs, namely Plaintiffs' home and the proceeds from the sale of Plaintiffs' home."  (Docket Entry 19-1, ¶ 70.)  Under North Carolina law, "[t]here are, in effect, two essential elements of a conversion claim:  [1] ownership in the plaintiff and [2] wrongful possession or conversion by the defendant."  Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012).  As an initial matter, Plaintiffs' conversion claim fails as a matter of law because, "[i]n North Carolina, only goods and personal property are properly the subjects of a claim for conversion.  A claim for conversion does not apply to real property."  Norman v. Nash Johnson & Sons' Farms, Inc., 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000).

Further, Plaintiffs have not alleged sufficient factual matter to establish that Defendant took any "wrongful" possession of their

property.  To the contrary, the Deed of Trust permits foreclosure upon default.  (See Docket Entry 9-1 at 12.)[10]  In other words, "[t]he act of foreclosing on a home where the borrower was in default on the mortgage does not constitute conversion." Aguinaldo v. Ocwen Loan Servicing, LLC, No. 5:12CV01393EJD, 2012 WL 3835080, at *6 (N.D. Cal. Sept. 4, 2012) (unpublished); see also Ham v. JP Morgan Chase Bank N.A., No. 2:11CV01544KJD-RJJ, 2012 WL 3883480, at *2 (D. Nev. Sept. 5, 2012) (unpublished) ("[T]here can be no . . . conversion of funds already owed under a loan agreement."); Ortega v. Wells Fargo Bank, N.A., No. 3:11CV01734, 2012 WL 275055, at *12 (N.D. Ohio Jan. 31, 2012) (unpublished) ("The relationship between [the] plaintiff and [the] defendant is that of creditor and debtor . . . .  A claim for conversion of the otherwise fungible funds used to pay [the] plaintiff's mortgage obligation requires a relationship beyond the one at work here, and [the] plaintiff has not sufficiently pled the existence of that relationship.").

The Court thus should dismiss Plaintiffs' claim for "Conversion."

---

[10] Defendant "asks this Court to take judicial notice of the Deed of Trust."  (Docket Entry 10 at 13 n.4.)  In so doing, Defendant notes that "[t]his Court may consider 'documents central to [P]laintiff's claim, and documents sufficiently referred to in the [C]omplaint so long as the authenticity of these documents is not disputed.'"  (Id. (quoting Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396-97 (4th Cir. 1996)).)  As Plaintiffs' claims rely, at least in part, on the Deed of Trust and no dispute exists as to its authenticity (see Docket Entry 14 (opposing Defendant's instant Motion, but without contesting legitimacy of copy of Deed of Trust proffered by Defendant)), the Court may consider it.

## C.  Breach of Contract/Intended Third-Party Beneficiary

Plaintiffs complain that Defendant's actions breached both the SPA and the Deed of Trust.  (Docket Entry 19-1, ¶¶ 73-79.)  As to the first of these matters, Plaintiffs contend that "[t]he SPA was intended to directly benefit distressed homeowners" (id. ¶ 74) and, "[a]s distressed homeowners, Plaintiffs are intended third party beneficiaries of the SPA agreement between [] Defendant and the U.S. government" (id. ¶ 75).  Consistent with persuasive authority on point, this Court should not allow Plaintiffs to pursue a contract action based on this theory.  See, e.g., Wigod, 673 F.3d at 559 n.4 ("[S]ince Astra, district courts have correctly applied the [Supreme] Court's decision to foreclose claims by homeowners seeking HAMP modifications as third-party beneficiaries of SPAs."); Bowers, 2012 WL 5941826, at *3 ("Where a homeowner has not entered into any agreement under HAMP . . ., [the homeowner] ha[s] no claim or cause of action to enforce HAMP guidelines on behalf of the federal government or as a third-party beneficiary of an SPA between the federal government and the mortgage servicer.").

With respect to the Deed of Trust, Plaintiffs allege that "Defendant agreed that it would abide by all laws in performing its duties under the Deed of Trust" (Docket Entry 19-1, ¶ 77) and that "Defendant breached the terms of the Deed of Trust by wrongfully foreclosing as described in this [C]omplaint" (id. ¶ 78).  However, as discussed in Subsection IV.B. and as Defendant points out, "the

remedy of foreclosure under power of sale is specifically authorized under the Deed of Trust." (Docket Entry 10 at 13 (citing Docket Entry 9-1).) Moreover, a provision in a deed of trust mandating its conformance with federal and state law "does not suggest, as Plaintiff[s] contend[], that a violation of federal or state law would constitute a breach of the deed of trust . . . ." Westinde v. JP Morgan Chase Bank, N.A., No. 3:13CV3576-O, 2014 WL 4631405, at *4 (N.D. Tex. Sept. 16, 2014) (unpublished).

Accordingly, Plaintiffs' claim for "Breach of Contract and Intended Third Party Beneficiary Doctrine" warrants dismissal.

D. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiffs allege that "Defendant is obligated by contract and common law to act in good faith and to deal fairly with each borrower" (Docket Entry 19-1, ¶ 81) and that:

> Defendant breached this duty as to [P]laintiffs by, *inter alia*:
>
> a. Referring the loan to foreclosure in violation of HAMP requirements;
>
> b. Recklessly and intentionally failing, without just cause, to stop the foreclosure sale as required by HAMP requirements;
>
> c. Recklessly and intentionally failing, without just cause, to notify the foreclosure attorney/trustee of the HAMP application and the requirement to suspend the sale;
>
> d. Failing to provide adequate customer service as required by HAMP requirements;

e.   Breaching  the  terms  of  the  Deed  of  Trust  by
             wrongful foreclosure.

(Id. ¶ 82.)

     Under  North  Carolina  law,  "[i]n  every  contract  there  is  an
implied covenant of good faith and fair dealing that neither party
will  do  anything  which  injures  the  right  of  the  other  to  receive
the  benefits  of  the  agreement."   Murray v. Nationwide Mut. Ins.
Co., 123 N.C. App. 1, 19, 472 S.E.2d 358, 368 (1996).  Because, as
discussed  in  Subsection  IV.C.,  the  Court  should  not  consider
Plaintiffs intended third-party beneficiaries of the SPA, the Deed
of  Trust  represents  the  only  contract  which  could  contain  the
implied covenant of good faith and fair dealing.  In that respect,
Plaintiffs allege only that Defendant "[b]reached the terms of the
Deed of Trust by wrongful foreclosure."  (Docket Entry 19-1, ¶ 82.)
For reasons stated in Subsections IV.B. and IV.C., Plaintiffs have
not  alleged  factual  matter  sufficient  to  show  "wrongful"  action
related to the Deed of Trust.

     In  sum,  Plaintiffs'  claim  for  "Breach  of  Implied  Covenant  of
Good  Faith  and  Fair  Dealing"  falls  short.   See generally Dove Air,
Inc. v. Florida Aircraft Sales, LLC, No. 1:10CV47, 2011 WL 3475972,
at *9 (W.D.N.C. Aug. 9, 2011) (unpublished) ("A claim based on the
covenant of good faith and fair dealing is not simply an open door
through which a plaintiff can try to prove that the defendants are
'bad people' . . . .").

E.  Secure and Fair Enforcement Mortgage Licensing Act

Plaintiffs assert that Defendant violated two provisions of the North Carolina Secure and Fair Enforcement Mortgage Licensing Act ("SAFE Act").  (Docket Entry 19-1, ¶¶ 84-86.)  The relevant sections provide:

> [I]t shall be unlawful for any person in the course of any residential mortgage loan transaction:
>
> . . .
>
> (8)  To engage in any transaction, practice, or course of business that is not in good faith or fair dealing or that constitutes a fraud upon any person in connection with the brokering or making or servicing of, or purchase or sale of, any mortgage loan.
>
> . . .
>
> (14) To fail to comply with applicable State and federal laws and regulations related to mortgage lending or mortgage servicing.

N.C. Gen. Stat. § 53-244.111(8) & (14).

Defendant contends that the SAFE Act does not provide for a private cause of action.  (Docket Entry 10 at 14.)  In response, Plaintiffs offer the following:

> Prior to the enactment of the SAFE Act, the North Carolina Court of Appeals had already held that the Mortgage Lending Act [("MLA") - the SAFE Act's predecessor statute -] created a private cause of action. *See Guyton v. FM Lending Services, Inc.,* 199 N.C. App. 30, 681 S.E.2d 465 (2009) (the [MLA] created a duty of care owed to the borrower and the borrower could bring an action against the lender for damages where that duty had been violated).  It follows that its successor statute, the SAFE Act, also creates a private cause of action.

(Docket Entry 14 at 15.)

The decision cited by Plaintiffs does not support the position that the MLA included a private cause of action; in fact, the court in question only looked to the MLA to determine whether the defendant owed a legal duty to the plaintiffs (who did not pursue a claim for "Violation of the MLA"). See Guyton, 199 N.C. App. at 48, 681 S.E.2d at 479 (ruling that the plaintiffs "have advanced allegations sufficient to survive a dismissal motion . . . with respect to its fraud and unfair and deceptive practices claims" (emphasis added)). Moreover, a more recent decision concluded that the MLA provided a limited remedy only available to the Commissioner of Banks. In re Bradburn, 199 N.C. App. 549, 552-53, 681 S.E.2d 828, 830-31 (2009). Federal courts examining this issue also have concluded that the MLA did not provide for a private right of action. See, e.g., Ahmed v. Porter, No. 1:09-CV-101, 2009 WL 2581615, at *24 (W.D.N.C. June 23, 2009) (unpublished) ("[T]he court cannot find a reported case in which it was held that [the MLA] provides a private cause of action. While it is clear that the statute makes it *unlawful* for any person to engage in mortgage lending who is not licensed by the state board, . . . it is equally clear that the only enforcement authority is that of the banking commissioner to impose appropriate discipline . . . ." (emphasis in original) (internal citations omitted)).[11]  Plaintiffs' assertion

---

[11] Ahmed pre-dates Guyton; however, for the reasons discussed above, Guyton does not alter Ahmed's conclusion.

that the SAFE Act provides a private right of action because its predecessor statute provided one therefore lacks merit.

Nor has independent research revealed any statutory language establishing and/or case law recognizing a private right of action under the SAFE Act. Given the above-cited authority indicating the SAFE Act's predecessor statute lacked any private right of action, the Court should not construe the SAFE Act to do so, particularly because North Carolina law expressly prescribes other remedial action for violations of the SAFE Act, i.e., enforcement by the Commissioner of Banks, see N.C. Gen. Stat. § 53-244.116. See Lea v. Grier, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (observing that North Carolina "case law generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute" (internal quotation marks omitted)); see also Myers v. Sessoms & Rogers, P.A., 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011) ("Federal courts applying state laws should not create or expand a state's common law or public policy."). Plaintiffs' claim for "Violations of North Carolina Secure and Fair Enforcement Mortgage Licensing Act" thus fails as a matter of law.

### F. Unjust Enrichment

Plaintiffs next assert a claim for unjust enrichment based on the allegations that "Defendant has accepted the benefit of the proceeds from the foreclosure sale of Plaintiffs' home," "Defendant

led Plaintiffs to believe that Plaintiffs were being reviewed for a loan modification and there would not be a foreclosure sale," and "Defendant foreclosed and has been unjustly enriched by accepting the proceeds of the wrongful foreclosure sale." (Docket Entry 19-1, ¶¶ 88-90.)  According to Defendant, because the Deed of Trust allowed foreclosure as a remedy and a claim for unjust enrichment cannot stand where a contract exists that forms the basis for a claim, the Court should dismiss Plaintiffs' unjust enrichment claim. (Docket Entry 10 at 15.)  Defendant's argument has merit.

North Carolina law treats a claim for unjust enrichment as "'a claim in quasi contract or a contract implied in law . . . .'" Bain v. Unitrin Auto and Home Ins. Co., 210 N.C. App. 398, 408, 708 S.E.2d 410, 417 (2011) (quoting Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).  "[T]herefore, 'if there is a contract between the parties the contract governs the claim and the law will not imply a contract.'"  Id. (quoting Booe, 322 N.C. at 570, 369 S.E.2d at 556).  Here, the Deed of Trust governed the Parties' rights with respect to foreclosure, rendering a claim for unjust enrichment inappropriate.  See id. ("Since a contract exists between the parties governing the claim, no claim for unjust enrichment can arise.").  Under these circumstances, the Court should dismiss Plaintiff's claim for "Unjust Enrichment."

## G. Unfair Trade Practices

Plaintiffs allege that "Defendant has violated N.C. [Gen. Stat.] § 75-1.1 [("UDTPA")] by engaging in unfair or deceptive acts which were in commerce or affected commerce, and which caused injury to Plaintiffs . . . ." (Docket Entry 19-1, ¶ 92.) Specifically, Plaintiffs contend that, "[b]y proceeding with foreclosure while Plaintiffs were under loan modification review, Defendant engaged in a 'dual track' process which violated the requirements of the SPA and resulted in a wrongful foreclosure" and that "Defendant misrepresented to Plaintiffs that during the loan modification process, Plaintiffs would not lose their home by a foreclosure sale." (Id. ¶¶ 93-94.)

> Although HAMP did not create a private right of action,
>
> North Carolina courts have held that violations of a statute designed to protect the public, and violations of established public policy, may constitute unfair and deceptive practices under state law, even where the violated statute does not provide for a private right of action. E.g., *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (N.C. 1995) (concerning violation of landlord-tenant law under N.C.G.S. § 42-25.6); *Gray v. North Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E. 2d 676, 683 (N.C. 2000) (holding that a violation of insurance laws under N.C.G.S. § 58-63-15(11), which did not contain a private right of action, constituted a violation of N.C.G.S. § 75-1.1, because such conduct is "inherently unfair, unscrupulous, immoral, and injurious to consumers.") Furthermore, several courts have specifically found that a HAMP violation can create the basis for an unfair and deceptive act claim under state law. E.g. *Boyd v. U.S. Bank, N.A.*, No. 10 C 3367, 787 F. Supp. 2d 747, 752 (N.D. Ill. Apr. 12, 2011); *Morris v. BAC Home Loans Servicing,*

*L.P.*, Civil No. 1:10-11572-PBS, 775 F. Supp. 2d 255, 259 (D. Mass. Apr. 4, 2011).

In re Hinson, 481 B.R. 364, 376 (Bankr. E.D.N.C. 2012).

"[A UDTPA] claim under [North Carolina law] requires proof of three elements: (1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) proximately causing actual injury to plaintiff or plaintiff's business." AG Sys., Inc. v. United Decorative Plastics Corp., 55 F.3d 970, 974 (4th Cir. 1995). In the notice sent by Defendant that Plaintiffs attached to their Complaint, Defendant states: "While we consider your request, any scheduled foreclosure sale will not occur pending our determination." (Docket Entry 4-3 at 4.) Defendant further allegedly informed Plaintiffs via letter: "If you do not qualify for HAMP, or if you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice." (Id. at 11.) The foreclosure sale allegedly did not occur consistently with those representations and, as a result, "Plaintiffs forewent other remedies that might have been pursued to save their home from a foreclosure sale; Plaintiffs lost any equity they had in their home; and Plaintiffs' credit rating has been damaged." (Docket Entry 19-1, ¶ 68.)

The foregoing allegations appear to make out the elements of a UDTPA claim and, therefore, the Court should allow that claim to proceed. See Robinson v. Deutsche Bank Nat'l Trust Co., No. 5:12CV590F, 2013 WL 1452933, at *19-20 (E.D.N.C. Apr. 9, 2013)

-31-

(unpublished) (denying motion to dismiss UDTPA claim because, "[w]here, as here, [the] [p]laintiff alleges, *inter alia*, that [the] [d]efendant [] provided her with false information about the HAMP process and the status of her property -- including the statement that the foreclosure sale would not go forward while her loan modification application was being processed -- there is a plausible claim that [the defendant's] actions were unfair or had the tendency to deceive . . . [and the] [p]laintiff plausibly alleges that [the defendant's] misrepresentations about the foreclosure sale proximately caused her to forego any other remedy to prevent the sale of her home"); Hinson, 481 B.R. at 377 ("[The plaintiffs] allege that the defendants provided false and misleading information regarding [a] HAMP application. Furthermore, these defendants instituted foreclosure proceedings before the plaintiffs' HAMP modification had been denied, and without timely providing reasons for the denial . . . . The plaintiffs have alleged facts which would show that they were proximately harmed as a result of these actions through the foreclosure of their home . . . . The [] defendants, acting as lenders and mortgage servicers clearly engaged in acts in or affecting commerce. The [] defendants' actions . . . are within the meaning of 'unfair' and 'deceptive.' The plaintiffs have alleged sufficient facts, which accepted as true, state a claim upon which relief can be granted under N.C.G.S. § 75-1.1 . . . .").

### H.  Intentional Infliction of Emotional Distress

Under North Carolina law, "[t]he essential elements of intentional infliction of emotional distress are:  '(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress.'"  <u>Burgess v. Busby</u>, 142 N.C. App. 393, 399, 544 S.E.2d 4, 7 (2001) (quoting <u>Dickens v. Puryear</u>, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)) (internal brackets omitted).  This claim requires a showing of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded atrocious, and utterly intolerable in a civilized community."  <u>Hardin v. York Mem'l Park</u>, ___ N.C. App. ___, ___, 730 S.E.2d 768, 777 (2012) (internal quotation marks omitted).

According to the Amended Complaint:

Defendant's conduct with regard to Plaintiffs was intentional, reckless, outrageous and caused Plaintiffs extreme emotional distress by:

   a.   Employing unconscionable tactics while rendering mortgage services and while collecting on the note;

   b.   Enforcing the remedy of foreclosure with knowledge or in reckless disregard of the knowledge that foreclosure would be in violation of the Treasury regulations;

   c.   Failing to adhere to the requirements of the Unlawful Debt Collections Act;

   d.   Failing to stop the foreclosure sale and failing to advise the foreclosing attorney/trustee to suspend the foreclosure pending review of the HAMP application.

(Docket Entry 19-1, ¶ 97.)  The Amended Complaint goes on to allege that, because of "Defendant's outrageous conduct and wrongful foreclosure, Plaintiffs have been, and continue to be, depressed, stressed, and unable to sleep well.  Plaintiffs have sought help from their church."  (Id. ¶ 99.)

These allegations do not suffice.  See, e.g., Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) ("Extreme and outrageous conduct is behavior that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Here, the complaint pleads that [the plaintiff] was emotionally devastated by her dealings with [the] defendants and that she suffered from anxiety and loss of sleep. She also indicates that the problems with her mortgage strained her family relationships to a severe degree.  Without minimizing the significance of these allegations, the complaint alleges no facts showing that [the defendants] acted with the requisite intent or that the inconvenience and agitation [the plaintiff] endured rose to such a level that no reasonable person could be expected to endure it." (internal brackets, citations, and quotation marks omitted)); Maltbie v. Bank of Am., No. 13CV12087, 2013 WL 6078945, at *7 (E.D. Mich. Nov. 19, 2013) (unpublished) ("Conduct is considered extreme and outrageous if it goes beyond the bounds of decency and would be considered atrocious and utterly intolerable

in civilized society. . . . The [plaintiffs'] allegations in this case -- which amount to the claim that [the defendant] failed to offer them a loan modification and foreclosed on their property during the modification review process -- are not materially different from other cases holding that similar conduct does not constitute extreme or outrageous conduct."). Plaintiffs' claim for "Intentional Infliction of Emotional Distress" thus cannot succeed.

## I.  Exploitation of Elder Adults

Finally, Plaintiffs assert a claim by alleging a violation of N.C. Gen. Stat. § 14-112.2 for Exploitation of Elder Adults and asserting a right of action under N.C. Gen. Stat. § 14-113.6(b) and (c).  (See Docket Entry 19-1 at 15.)[12]  The former cited statute, inter alia, makes it unlawful for a person in a position of trust and confidence to, or who has a business relationship with, an elder adult, to take actions depriving that elder adult of the "use, benefit, or possession" of his or her "funds, assets, or property."  See N.C. Gen. Stat. § 14-112.2.  It provides only for criminal penalties.  See N.C. Gen. Stat. § 14-112.2(d), (e).

The statute under which Plaintiffs seek a remedy does provide for a private right of action, but only in the context of violations of Section 14-113.5.  See N.C. Gen. Stat. § 14-113.6(c). Section 14-113.5, in turn, addresses:  "Making, distributing,

---

[12] Plaintiffs incorrectly cite N.C. Gen. Stat. § 14-112.2 as N.G. Gen. Stat. § 14-112.3 in their Amended Complaint.  (See Docket Entry 19-1, ¶ 103.)

possessing, transferring, or programming [a] device for theft of telecommunication service; publication of information regarding schemes, devices, means, or methods for such theft, concealment of existence, origin or destination of any telecommunication." Plaintiffs have not alleged any facts consistent with such a violation. (See Docket Entry 19-1.)

Nonetheless, Plaintiffs ask the Court to recognize a private right of action in this context, arguing:

> Restatement (Second) of Torts § 874A (1979) provides that, "[w]hen a legislative provision protects a class of person by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may . . . accord to an injured member of the class a right of action," and "[i]f there is a statute (usually criminal) that prohibits particular conduct, the court may adopt that legislative rule and lay it down for the jury in place of the general standard of care."

(Docket Entry 14 at 17.) Said Restatement, however, also declares: "If the court determines that the legislative body did actually intend for civil liability to be imposed or not imposed, whether the intent is explicit or implicit, then the court should treat the situation as if it had expressly so provided." Restatement (Second) Torts § 874A(c).

In this case, Plaintiffs have alleged a violation of a criminal statute and have sought a remedy for this violation under a different statute that addresses a separate criminal provision. If nothing else, these circumstances make clear that North Carolina's legislative body had the knowledge and ability to create

a private right of action addressing a violation of a criminal law if it so desired. Moreover, Plaintiffs have not cited, and independent research has not revealed, any case law interpreting N.C. Gen. Stat. § 14-112.2 as providing for a civil remedy.

Under these circumstances, this Court should not recognize a private right of action for violation of N.C. Gen. Stat. § 14-112.2 and should dismiss Plaintiffs' claim for "Exploitation of Elder Adults." See Lea, 156 N.C. App. at 508, 577 S.E.2d at 415 (stating that North Carolina "case law generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute" (internal quotation marks omitted)); see also Myers, P.A., 781 F. Supp. 2d at 269 ("Federal courts applying state laws should not create or expand a state's common law or public policy.").

## V. Conclusion

Because Defendant has shown that the amount in controversy in this matter exceeds $75,000 and no dispute exists as to the diverse citizenship of the Parties, subject matter jurisdiction exists under 28 U.S.C. § 1332. Further, accepting the Amended Complaint and measuring its allegations against Defendant's Motion to Dismiss, should result in dismissal of all of Plaintiffs' claims except for violation of the UDTPA.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand to State Court (Docket Entry 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend Complaint (Docket Entry 19) is **GRANTED** in that Plaintiffs' claim for "Violation of Treasury Directive 10-02 and HAMP Servicer Requirements" is deemed abandoned and the paragraphs of the Complaint (Docket Entry 9) previously supporting that claim are deemed allegations within the general body of the Complaint.

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Plaintiffs' Complaint (Docket Entry 9) be granted in part and denied in part in that Plaintiffs' UDTPA claim should proceed, but the Court should dismiss all of Plaintiff's other claims.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 30, 2014

-38-